**FILED**

July 14 2011

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 10-0424

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 167

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

BRANDON JAMES BURNS,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 08-0701
Honorable Gregory R. Todd, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Fred Snodgrass, Attorney at Law, Billings, Montana

      For Appellee:

          Steve Bullock, Montana Attorney General, John Paulson, Assistant
Attorney General, Helena, Montana

          Scott Twito, Yellowstone County Attorney, Julie Mees, Deputy County
Attorney, Billings, Montana

Submitted on Briefs:  June 1, 2011

Decided:  July 14, 2011

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Brandon James Burns (Burns) was charged by information on December 18, 2008, with felony Driving Under the Influence of Alcohol or Drugs (DUI) or, in the alternative, felony Operation of a Motor Vehicle by a Person with Alcohol Concentration of 0.08% or more (DUI per se). Ultimately, on March 22, 2010, Burns entered a plea agreement with the State and pled guilty to DUI per se, reserving his right to appeal. On June 22, 2010, the Thirteenth Judicial District Court, Yellowstone County, designated Burns as a Persistent Felony Offender (PFO) and sentenced him to Montana State Prison for 15 years with five years suspended, consecutive to any other sentences Burns was serving. Burns timely appeals. We affirm.

## ISSUES

¶2 A restatement of Burns' issues on appeal is:

¶3 1. Whether the District Court erred in denying Burns' motion to dismiss for lack of a speedy trial.

¶4 2. Whether the District Court erred in denying Burns' motion to suppress evidence.

¶5 3. Whether the District Court erred in denying Burns' motion to dismiss the felony DUI charge on the grounds that his third prior DUI conviction was invalid.

¶6 4. Whether the District Court erred in sentencing Burns as a persistent felony offender.

## FACTUAL AND PROCEDURAL BACKGROUND

2

¶7 On December 13, 2008, around 8:30 p.m., Billings Police Department (BPD) officers responded to a citizen's 911 report of a suspicious car parked on Avenue C, a residential street in Billings. The citizen, who identified herself, reported that the vehicle's engine was running, its headlights were lights on, and a male occupant was slumped over in the driver's seat. The citizen stated that she called 911 out of concern for the driver's safety due to the cold weather and her uncertainty as to whether the vehicle had sufficient gas to continue running. The citizen also expressed concern about having an unknown man passed out in his vehicle just outside of her home.

¶8 BPD Officer Jensen and Sergeant Lawrence were dispatched to investigate the citizen's report. Both officers testified that it was a very cold night and the roads were snow covered and icy. Jensen testified that he was directed to go to Avenue C for a welfare check on a suspicious vehicle with a male occupant passed out in the driver's seat. Lawrence testified that he remembered being dispatched to a possible drunk driver passed out in a vehicle. Jensen did not activate his overhead lights when he pulled up behind the vehicle because he was making a welfare check. Jensen testified that when he arrived the vehicle was running, the headlights were on, and there was a male occupant slumped over in the driver's seat.

¶9 Jensen further testified that he knocked on the window of the vehicle at least twice and tried to call to the driver but could not awaken him. Therefore, Lawrence approached the passenger side of the vehicle, opened the passenger side door, and attempted to wake the driver. Lawrence testified that he was able to wake the driver by shaking him on the shoulder.

3

¶10 Once the driver was awake, the BPD officers attempted to identify him. Both noted an odor of alcohol emanating from the vehicle and observed a bottle of vodka that was two-thirds empty sitting on the front passenger seat. Jensen asked the driver his name, but he had difficulty understanding the driver because his speech was slurred. Finally, Jensen identified the driver as Burns. When asked for his license and registration, Burns appeared disoriented and could not locate them on the floor of his vehicle. Jensen noted Burns' eyes were red and glassy.

¶11 Jensen asked Burns to exit his vehicle. Burns' movements were slow and deliberate, and he had to hold on to his vehicle to maintain his balance as he exited. Jensen testified that, based on his observations, he contacted dispatch and changed the call from a welfare check to a DUI investigation. Due to the road conditions and the weather, none of the standard field sobriety tests were administered other than the Horizontal Gaze Nystagmus test. Burns was arrested and taken to the Yellowstone County Detention Facility (YCDF). En route to YCDF, the officers called Burns' parole officer who requested they take both a urine analysis and a blood alcohol content analysis. Once at YCDF, the officers performed the standard field sobriety tests on Burns, which he failed. A sample of Burns' breath registered a BAC of 0.230. After being *Mirandized*, Burns agreed to answer questions. He admitted to driving and thought it was Tuesday, December 12, 2009, at 2:30 p.m. when it was actually Saturday, December 13, 2008, at 9:38 p.m.

¶12 On December 19, 2008, Burns was arraigned and charged with one count of felony DUI in violation of § 61-8-401(1)(a), MCA, and in the alternative, one count of

4

DUI per se in violation of § 61-8-406(1)(a), MCA. The State filed notice of its intent to have Burns designated a PFO. The District Court scheduled Burns' omnibus hearing for February 19, 2009, and set a trial date of April 13, 2009. The trial was reset five times during the proceedings based on substantive motions by both parties, and ultimately a trial date was set for March 23, 2010.

¶13 Burns moved to dismiss for lack of speedy trial, and his motion was denied. On March 22, 2010, Burns filed an acknowledgement of waiver of rights and plea agreement in which he agreed to plead guilty to the alternative charge of DUI per se and the State agreed to dismiss the DUI charge. The State also agreed to recommend a sentence of 15 years with 5 years suspended as a PFO. The parties agreed that Burns could reserve the right to appeal the District Court's prior rulings. The court accepted Burns' change of plea at a hearing on the same date.

¶14 On June 22, 2010, the District Court followed the State's recommendation and sentenced Burns to Montana State Prison for 15 years with 5 suspended and designated him a PFO. Burns timely appeals. Additional facts are discussed below as necessary.

**STANDARDS OF REVIEW**

¶15 We review a district court's findings of fact in a ruling on a motion to dismiss on speedy trial grounds for clear error. *State v. Sartain*, 2010 MT 213, ¶ 10, 357 Mont. 483, 241 P.3d 1032. Factual findings are clearly erroneous "if they are not supported by substantial credible evidence, if the district court has misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been made." *Id.* Whether factual circumstances constitute

5

a violation of a defendant's right to a speedy trial is a question of constitutional law that we review de novo. *Id.*

¶16 We review a district court's denial of a motion to suppress evidence to determine whether the district court's findings of fact are clearly erroneous and whether the court correctly interpreted and applied the law to those findings. *State v. Kenfield*, 2009 MT 242, ¶ 15, 351 Mont. 409, 213 P.3d 461. We review for correctness a district court's conclusions of law with respect to the application of the community caretaker doctrine. *Id.*

¶17 A ruling on a motion to dismiss in a criminal proceeding is a question of law, which we review de novo. *State v. Allen*, 2009 MT 124, ¶ 9, 350 Mont. 204, 206 P.3d 951. "Whether a prior conviction can be used to enhance a criminal sentence is a question of law, which this Court reviews for correctness." *Id*. (quoting *State v. Spotted Eagle*, 2003 MT 172, ¶ 11, 316 Mont. 370, 71 P.3d 1239).

¶18 Generally, we review a criminal sentence longer than one year for legality only; that is, we review the sentence to determine whether it falls within the statutory parameters. *State v. Holt*, 2011 MT 42, ¶ 7, 359 Mont. 308, 249 P.3d 470.

**DISCUSSION**

¶19 *Issue One: Did the District Court err in denying Burns' motion to dismiss for lack of a speedy trial?*

¶20 The Sixth and Fourteenth Amendments to the United States Constitution and Article II, Section 24 of the Montana Constitution grant criminal defendants the right to a speedy trial. *State v. Brown*, 2011 MT 94, ¶ 10, 360 Mont. 278, ___ P.3d ___. When a

6

defendant alleges that his or her right to a speedy trial has been violated, Montana courts apply the four-factor speedy trial analysis we set forth in *State v. Ariegwe*, 2007 MT 204, 338 Mont. 442, 167 P.3d 815. The four factors to be balanced are the length of the delay, the reasons for the delay, the accused's responses to the delay, and the prejudice to the accused. *Ariegwe*, ¶ 34. Each factor's significance varies based on the particular unique facts and circumstances of each case. *State v. Hendershot*, 2009 MT 292, ¶ 9, 352 Mont. 271, 216 P.3d 754 (quoting *State v. Billman*, 2008 MT 326, ¶ 11, 346 Mont. 118, 194 P.3d 58).

¶21 As to Factors One and Two—length of delay and reason for the delay—it is the burden of the courts and prosecutors to bring a defendant to trial and it is the burden of the prosecution to explain pretrial delays. *State v. Lacey*, 2010 MT 6, ¶ 17, 355 Mont. 31, 224 P.3d 1247 (citing *Ariegwe*, ¶¶ 64-65, 72). However, "if the defendant avoids being brought to trial, some or all responsibility for the delay should be attributed to him." *Lacey*, ¶ 18. The defendant and the State can share the responsibility for the same period of delay. *Id.*

¶22 Here, there is no dispute as to Factor One; the length of the delay was 465 days. Under *Ariegwe,* a delay greater than 200 days triggers speedy trial concerns and there is a presumption of prejudice to the defendant that requires further analysis of the remaining factors. *Ariegwe*, ¶ 107. The District Court determined that the delay beyond the trigger date was 265 days. Accordingly, the State was required to provide compelling justifications for the delay under Factor Two, and to make a highly persuasive showing that Burns was not prejudiced by the delay under Factor Four. *Ariegwe*, ¶ 123.

¶23    With respect to Factor Two, the reason for the delay, the District Court was required to identify each period of delay in bringing Burns to trial, attribute each period to either the State or Burns, and assign appropriate weight to each period of delay based on the specific cause and culpability. *Ariegwe*, ¶ 124. Burns argues he is responsible for only the 72-day delay between April 13, 2009, and June 23, 2009, as he filed a motion to continue the April 13, 2009 trial date and affirmatively waived his right to speedy trial for that timeframe. The State asserts that the District Court did not err in attributing a total of 190 days of the delay to the State, and the balance to Burns.

¶24    In addition to the 72 days for which Burns takes responsibility, the District Court attributed to Burns the 70-day delay between August 31, 2009, and November 9, 2009, because he filed a motion to dismiss concerning enhancement, as well as the last 134-day delay between November 9, 2009, and March 23, 2010, which was the time during which the court considered Burns' motion to dismiss. To the State, the District Court delegated the 121-day delay between Burns' arrest and the first trial setting on April 13, 2009, as well as the 69-day delay between June 23, 2009, and August 31, 2009, caused by the State's motion to continue. The District Court ultimately concluded that the bulk of the delay was caused by Burns' motions to continue and dismiss, and that the State did not delay the trial in bad faith or with negligence or lack of diligence.

¶25    Factor Three requires a court to consider the accused's response to the delay. *Ariegwe*, ¶ 110. This factor "serves an important role by providing insight into whether the accused really wanted a speedy trial, and guides the reviewing court in weighing the other three factors in the analysis." *Hendershot*, ¶ 13 (citing *Ariegwe*, ¶ 79). In

8

considering this factor, the District Court noted that Burns was represented by counsel throughout the proceedings and did not object to the State's motion to continue early in the proceedings. Further, the District Court noted that Burns filed a motion to continue and a waiver of speedy trial rights just before the April 2009 trial date, and again filed a motion to dismiss just before the August 2009 trial, which necessitated a continuance of that trial and the subsequent one. Finally, Burns did not file his speedy trial motion until a month before his latest trial date in March 2010.

¶26 Turning to Factor Four, a court must consider whether the defendant has been prejudiced by the delay. *Ariegwe*, ¶ 111. Here, the District Court evaluated prejudice to Burns in light of the interests that the speedy trial right was designed to protect: (1) freedom from oppressive pretrial incarceration; (2) the accused's anxiety and concern caused by the presence of unresolved criminal charges; and (3) the possibility that the accused's defense will be impaired by dimming memories and loss of exculpatory evidence. *Ariegwe*, ¶ 111. Considering the first interest, the District Court noted that Burns had been incarcerated throughout the process, but not because of the felony DUI charge. He was incarcerated because of a prior conviction involving the sexual abuse of children. Considering the second interest, the District Court found that Burns' arguments that he had lost his job, home, and personal belongings because of the delay was unpersuasive because Burns had lost his job, home, and personal belongings as a result of his initial incarceration, which was well before the first trial date in this matter. Finally, considering the third interest, the District Court concluded that Burns had presented no evidence or claim that his defense had actually been impaired by the delay.

Burns argued that "one potential defense witness" had moved from Billings without a forwarding address, but he failed to explain how this witness could aid in his case given that she was not in the car when Burns was arrested, nor was she present when Burns was being investigated for DUI.

¶27 After analyzing all of the factors separately, the District Court balanced them in the context of the specific facts of the case and the weights assigned to each factor. *See Ariegwe*, ¶ 153. The District Court concluded that Factors Two, Three, and Four weighed against Burns and outweighed Factor One, which favored Burns. Therefore, the District Court concluded that Burns had not been deprived of his right to speedy trial.

¶28 On appeal, Burns reasserts the same arguments he presented in District Court. We are not persuaded by these arguments because Burns has failed to allege or demonstrate that the District Court's findings were clearly erroneous or its interpretations of the law were incorrect. A review of the record demonstrates the District Court made a scrupulous recitation of the procedural dates and facts and diligently applied the *Ariegwe* analysis to those facts. While Burns argues that the District Court should have come to a different conclusion for each of the four factors, he has simply failed to meet his burden of proof on appeal because he has not demonstrated how the District Court erred.

¶29 Furthermore, we conclude the District Court did not err in balancing and weighing the four factors and, therefore, it did not err in denying Burns' motion.

¶30 *Issue Two: Did the District Court err in denying Burns' motion to suppress evidence?*

¶31 Burns argues that he was unlawfully seized because the BPD officers did not have particularized suspicion to conduct an investigative stop. Therefore, he maintains, the District Court erred in denying his motion to suppress the observations and evidence obtained by the police officers during their interactions with Burns. The State argues that the District Court did not err in concluding that the BPD officers' conduct was justified under the community caretaker doctrine. We conclude that the District Court did not err because, contrary to Burns' argument that the BPD officers made no attempt to check on his welfare and that there were no signs of peril, this encounter between the BPD officers and Burns falls squarely within the community caretaker doctrine.

¶32 We set out the analysis as to the correct application of the community caretaker doctrine in *State v. Lovegren*, 2002 MT 153, 310 Mont. 358, 51 P.3d 471. As we stated in *Lovegren*, "[n]ot all contact between police officers and citizens involves the 'seizure' of a person" and "many courts recognize the existence of three categories of police-citizen encounters." *Lovegren*, ¶ 13 (internal citations omitted). The least intrusive category of encounter is the community caretaker function, which recognizes that peace officers have a duty to investigate situations in which a citizen may be in peril or may need assistance from an officer. *Id.* at ¶¶ 16, 20. "[T]he caretaking duties that come under this doctrine are varied and range from *assisting a driver slumped over in his car* to stopping a man walking alongside the road." *Id.* at ¶ 21 (internal citations omitted) (emphasis added).

¶33 Montana has a three-part test to determine if a citizen-officer encounter falls under the community caretaker doctrine.

11

First, as long as there are objective, specific and articulable facts from which an experienced officer would suspect that a citizen is in need of help or is in peril, then that officer has the right to stop and investigate. Second, if the citizen is in need of aid, then the officer may take appropriate action to render assistance or mitigate the peril. Third, once, however, the officer is assured that the citizen is not in peril or is no longer in need of assistance or that the peril has been mitigated, then any actions beyond that constitute a seizure implicating not only the protections provided by the Fourth Amendment, but more importantly, those greater guarantees afforded under Article II, Sections 10 and 11 of the Montana Constitution as interpreted in this Court's decisions.

*Lovegren*, ¶ 25.

¶34 Applying this test here, the facts support the District Court's conclusion that the BPD officers had objective, specific and articulable facts signifying that Burns may be in peril or in need of assistance. The BPD officers were dispatched to respond to a citizen's 911 call about a male driver passed out in his vehicle. Burns could have been sleeping or he could have been suffering from a medical condition for which he needed assistance. When the BPD officers arrived Burns was "passed out, slumped over & leaning on the center console" while his vehicle was running and the headlights were on. It was 8:30 p.m. on a very cold December night and the roads were snow-covered and icy. As in *Lovegren*, the BPD officers had the right to investigate Burns' welfare and to open the door to Burns' vehicle after Burns did not respond to Jensen's knock on his vehicle window. As we said in *Lovegren*, "it would have been a dereliction of [the BPD officers'] duties if, after knocking on the window and obtaining no response, [the BPD officers] walked away and continued [their] patrols." *Lovegren*, ¶ 26.

¶35 After Lawrence opened the vehicle door he had to shake Burns to awaken him. At that point the BPD officers saw no apparent signs of peril; however, they noticed the

vodka bottle sitting on the front passenger seat. When Burns identified himself, the BPD officers noted signs of intoxication in Burns including extremely slurred speech, red and glassy eyes, difficulty locating his driver's license and maintaining his balance, and disorientation. These signs gave the BPD officers particularized suspicion to further investigate and to contact dispatch to change the call from a welfare check to a DUI investigation.

¶36 Burns argues that the facts of his case are "indistinguishable" from those of *State v. Reiner*, 2003 MT 243, 317 Mont. 304, 77 P.3d 210. However, even a cursory reading of *Reiner* debunks this argument. In *Reiner*, the defendant was asleep in his car that was parked on the side of the road in a place not normally used for parking. *Reiner*, ¶¶ 4-5. The investigating officer testified that he did not stop to check on Reiner's welfare, but rather stopped because he thought Reiner was the potential DUI offender that had been called into dispatch. *Reiner*, ¶ 21. Here, the record clearly indicates that the BPD officers were dispatched to check on the welfare of Burns because a citizen reported that he was slumped over in his car while the car was running and the headlights were on.

¶37 Accordingly, the District Court did not err in denying Burns' motion to suppress.

¶38 *Issue Three: Did the District Court err in denying Burns' motion to dismiss the felony DUI charge on the grounds that his third prior DUI conviction was invalid?*

¶39 Burns claims that the third of his four DUI convictions, which occurred in Billings Municipal Court in 1997, is constitutionally infirm in three ways: he was not given proper notice of the trial date; there were filing errors; and he was involuntarily absent

when the 1997 trial was held in absentia. Thus, he argues that his conviction of DUI per se, fourth offense and a felony, must be reversed.

¶40 In Montana, the State may not use a constitutionally infirm conviction to support an enhanced punishment, such as felony DUI. *State v. Mann*, 2006 MT 33, ¶ 15, 331 Mont. 137, 130 P.3d 164 (citing *State v. Snell*, 2004 MT 334, ¶ 25, 324 Mont. 173, 103 P.3d 503). A rebuttable presumption of regularity attaches to a prior criminal conviction that is used to enhance punishment. *State v. Maine*, 2011 MT 90, ¶ 33, 360 Mont. 182, ___ P.3d ___. To overcome this presumption, *the defendant*, as the moving party, has the ultimate burden of proof—both the burden of production and the burden of persuasion—to prove by a preponderance of the evidence that the conviction is *invalid*. *Maine*, ¶ 34. To meet this burden, the defendant must produce affirmative evidence that his or her conviction violates the Constitution. *Id.* The defendant "may not simply point to an ambiguous or silent record." *Id.* Additionally, "[s]elf-serving statements by the defendant that his or her conviction is infirm are insufficient to overcome the presumption of regularity and bar the use of the conviction for enhancement." *Id.* When and if a defendant produces evidence demonstrating that the prior conviction is infirm, the State then has the burden to rebut that evidence. *Id.* at ¶ 33.

¶41 Because a rebuttable presumption of regularity is accorded Burns' 1997 conviction we must determine whether Burns produced affirmative evidence that his constitutional rights were violated sufficient to meet his burden of proof. In support of his motion, Burns submitted an affidavit and documents from the Billings Municipal Court record. At the evidentiary hearing Burns did not call any witnesses. The State called Gayle

Stewart, the presiding Billings Municipal Court Judge in 1997. Stewart testified at length regarding her regular practices, including those during an arraignment in which she notified defendants of their rights en masse and then set individual trial dates for each defendant when he or she appeared individually to enter a plea, simultaneously recording the trial date in her own handwriting on the docket sheet. The exhibits presented by Burns to the District Court during the evidentiary hearing clearly indicate Burns was present at his arraignment on March 13, 1997, evidenced by his signature on the waiver of court-appointed counsel form. At the arraignment, Burns pled not guilty and demanded a jury trial. As was Stewart's regular practice, she informed Burns of his trial date and the pretrial conference date. This is evidenced by Stewart's handwritten note on the docket sheet indicating a trial date of August 20, 1997. Moreover, Burns signed a time-pay agreement for his bond, upon which his trial date was written.

¶42 Based upon the foregoing, we conclude that Burns' self-serving affidavit was contradicted by the documents he submitted from the Billings Municipal Court records, and that he otherwise failed to prove that his 1997 conviction was invalid. Therefore, the District Court did not err in ruling that the 1997 conviction could be used to support a charge of felony DUI in this case, nor did it err in denying Burns' motion to dismiss.

¶43 *Issue Four: Did the District Court err in sentencing Burns as a persistent felony offender?*

¶44 Finally, Burns argues that the District Court did not have discretion to sentence him to anything other than the statutorily mandated felony DUI Department of Corrections 13 month commitment followed by a suspended term of no more than five

years, regardless of whether or not he is sentenced pursuant to the State's PFO designation. *See* § 61-8-731(1), MCA. Burns recognizes that *State v. Damon*, 2005 MT 218, 328 Mont. 276, 119 P.3d 1194 (Cotter & Nelson, JJ., concurring in part and dissenting in part), articulates the current state of the law, but argues that *Damon* was indirectly overruled by the rationale in *State v. Brendal*, 2009 MT 236, 351 Mont. 395, 213 P.3d 448. He asks this Court to remand his case for sentencing in accordance with *Brendal*. The State argues that the District Court imposed a legal sentence when it sentenced Burns as a PFO because the sentence is well within the statutory parameters and is consistent with this Court's precedent. The State argues that had we intended to overrule *Damon* in *Brendal*, we would have done so expressly. We agree with the State.

¶45 The defendant in *Damon* was convicted of felony DUI and sentenced as a PFO to a term in prison. On appeal, we rejected the defendant's argument that the specific felony DUI sentencing provisions should prevail over the more general provisions of the PFO statutes and preclude enhancement of his felony DUI sentence under the PFO statute. *Damon*, ¶¶ 35, 37. We held that a district court has the authority to designate and sentence a PFO pursuant to § 46-18-502, MCA, "when the underlying charge meets the definition of a felony and the State has provided proper notice of its intent to seek persistent felony offender status under § 46-13-108, MCA." *Damon*, ¶ 37. We subsequently explicitly discussed *Damon* at length in *Brendal* and confirmed that the holding in *Damon* was still valid. *Brendal*, ¶¶ 21-22.

¶46 *Damon* is controlling law on this issue and is consistent with our recent precedent regarding the PFO sentencing statute, § 46-18-502, MCA. In *State v. Gunderson*, 2010

16

MT 166, 357 Mont. 142, 237 P.3d 74, we explained that, regardless of the nature of the underlying felony, "sentences imposed based on an offender's status as a persistent felony offender *replace* the sentence for the underlying felony." *Gunderson*, ¶ 54 (emphasis in original) (holding the PFO sentence replaces the maximum sentence for the underlying felony of burglary); *see State v. Johnson*, 2010 MT 288, ¶ 19, 359 Mont. 15, 245 P.3d 1113 (the PFO sentence replaces the underlying felony sentence of a defendant convicted of felony intimidation). Further, in *State v. Brooks*, 2010 MT 226, 358 Mont. 51, 243 P.3d 405, we held that a felony DUI is a legitimate trigger for a PFO designation and "[a]n enhanced sentence under § 46-18-502, MCA, does not supplement, but supplants the sentence for the underlying felony." *Brooks*, ¶ 18.

¶47 Because Burns' third DUI conviction was valid, the instant DUI per se was his fourth DUI conviction and, therefore, a felony. The State gave proper notice of its intent to seek PFO status under § 46-13-108, MCA. Accordingly, we hold that the District Court did not err in sentencing Burns as a PFO on the DUI per se charge because Burns' sentence was within the parameters provided by statute and is consistent with this Court's precedent.

## CONCLUSION

¶48 For the foregoing reasons, we affirm the District Court rulings on Burns' pretrial motions and its sentencing of Burns to Montana State Prison as a PFO.

¶49 Affirmed.

/S/ PATRICIA COTTER

17

We concur:


/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ BRIAN MORRIS
/S/ JIM RICE