**FILED**

March 6 2012

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 11-0193

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 52

STATE OF MONTANA,

        Plaintiff and Appellee,

  v.

JOHN BRANDON LACEY,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DC 99-076B
Honorable John Brown Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Joslyn Hunt, Chief Appellate Defender; Matthew M. Wilcox, Wendy
Johnson, Assistant Appellate Defenders, Helena, Montana

        For Appellee:

                Steve Bullock, Montana Attorney General; Tammy K Plubell, Assistant
Attorney General, Helena, Montana

                Marty Lambert, Gallatin County Attorney; Ashley Whipple, Deputy County
Attorney, Bozeman, Montana

Submitted on Briefs:  January 4, 2012
Decided:  March 6, 2012

Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1     John Lacey (Lacey) appeals his conviction for sexual intercourse without consent in the Eighteenth Judicial District, Gallatin County. We affirm. Lacey raises the following issues:

¶2     *Did the prosecutor make multiple statements during her opening and closing statements to the jury that warrant this Court's exercise of plain error review?*

¶3     *Did the State impermissibly change its legal theory of how Lacey committed sexual intercourse without consent?*

¶4     We recounted in detail the factual and procedural history of this matter in *State v. Lacey,* 2010 MT 6, ¶ 5, 355 Mont. 31, 224 P.3d 1247. We provide here only those details pertinent to Lacey's present appeal.

¶5     J.G. ran away from home at the age of 15 in the spring of 1995. Lacey, the father of J.G.'s friend, offered J.G. a place to stay. Lacey provided J.G. with free alcohol. J.G. frequently consumed excessive amounts of alcohol at Lacey's house. Lacey also provided J.G. with free marijuana. J.G. smoked daily. Lacey, more than 30 years J.G.'s senior, repeatedly initiated sexual contact with J.G. when J.G. became intoxicated from drugs and alcohol. J.G. repeatedly resisted Lacey's advances. These encounters made J.G. uncomfortable, but he nevertheless continued to live at Lacey's house.

¶6     Lacey came into J.G.'s bedroom one evening when J.G. was highly intoxicated. Lacey, half undressed, had an erection. He grabbed J.G.'s head and shoved his penis into J.G.'s mouth. J.G., who was 16 years old at the time, unsuccessfully resisted Lacey's assault in his impaired state.

¶7     J.G. moved out of Lacey's house for a brief period following the encounter. Lacey eventually enticed J.G. to return, however, with offers of free alcohol and marijuana. Lacey resumed his sexual advances. J.G. continued to resist. On one occasion, however, J.G. awoke with Lacey's penis in his mouth. J.G. again moved out of Lacey's house following this second assault.

¶8     Lacey moved to California shortly after the second incident. J.G. confided in Lacey's daughter, Rian, about Lacey's conduct. Rian corresponded with her father about the accusations made by J.G. Lacey denied that the incidents had occurred. Lacey further indicated that he had cancer—a diagnosis that Lacey never substantiated. Lacey explained that he was moving to Mexico to seek radical cancer treatment.

¶9     The Gallatin County Sheriff's Office began to investigate J.G.'s allegations of sexual misconduct by Lacey in November 1997. The State of Montana eventually charged Lacey with two counts of sexual intercourse without consent in April 1999. Count two of the information specifically alleged that Lacey had committed the crime while "JG was asleep and therefore incapable of consent." Gallatin County could not locate Lacey until 2007 when law enforcement arrested him in Arizona.

¶10    Lacey's case proceeded to trial in 2008. A jury convicted him on both counts. This Court reversed, however, based on the district court's erroneous admission of evidence regarding Lacey's conduct with other young men under the transaction rule. We ordered a new trial. *Lacey,* ¶ 33.

¶11    Lacey again faced a jury in October 2010 on two counts of sexual intercourse without consent. The first count alleged that Lacey had completed the crime through force. The

3

second count alleged that Lacey had committed sexual intercourse without consent based upon J.G.'s incapacity to consent either due to being asleep or due to intoxication. Lacey defended himself on the grounds that he and J.G. had a consensual, loving relationship. The jury convicted Lacey on both counts.

¶12 Lacey moved for a new trial. He argued that the prosecutor had made inappropriate comments during her opening and closing statements intended to prejudice him with the jury. Lacey also argued that the State unlawfully had changed its legal theories regarding the nature of the sexual intercourse without consent. He argued specifically that the information did not allege force, but that the State had offered the theory at trial that Lacey had committed the sexual assault through the use of force. He further argued that the information alleged only that J.G. had been incapable of consent due to having been asleep. Lacey contended that the information had not alleged incapacitation due to J.G.'s intoxication.

¶13 The District Court agreed with Lacey that it should not have allowed the State to proceed on the force theory. The court substituted a not guilty verdict for the jury's guilty verdict on count one to remedy its error. The court denied Lacey's motion for a new trial with respect to the other count. Lacey appeals.

STANDARD OF REVIEW

¶14 We generally will not review issues not raised before the district court. *State v. Thorpe*, 2010 MT 92, ¶ 23, 356 Mont. 150, 231 P.3d 1096. We may undertake review of such an issue, however, under the plain error doctrine. *Thorpe,* ¶ 23. This Court invokes plain error review sparingly. *Thorpe,* ¶ 23. We apply plain error review only in situations that implicate a defendant's fundamental constitutional rights when failing to review the

4

alleged error may result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the proceedings, or compromise the integrity of the judicial process. *Thorpe,* ¶ 23.

¶15 We review jury instructions for an abuse of discretion. *State v. Spotted Eagle,* 2010 MT 222, ¶ 6, 358 Mont. 22, 243 P.3d 402. The district court has broad discretion in formulating jury instructions. *Spotted Eagle*, ¶ 6. We review jury instructions to determine whether the instructions, as a whole, fully and fairly instruct the jury on the law applicable to the case. *Spotted Eagle*, ¶ 6. Any mistake in instructing the jury must affect prejudicially the defendant's substantial rights in order to constitute reversible error. *Spotted Eagle,* ¶ 6.

## DISCUSSION

¶16 *Issue 1: Did the prosecutor make multiple statements during her opening and closing statements to the jury that warrant this Court's exercise of plain error review?*

¶17 Prosecutors generally may not offer personal opinions as to the credibility of the accused or other witnesses. *State v. Green*, 2009 MT 114, ¶ 33, 350 Mont. 141, 205 P.3d 798. Prosecutors may comment on conflicts and contradictions in testimony. *Green,* ¶ 33. They also may comment on the evidence presented and suggest to the jury inferences that may be drawn from that evidence. *Green*, ¶ 33.

¶18 Lacey contends that the prosecutor's closing argument went beyond comments on the testimony and creeped into the realm of personal opinion. He first argues that the prosecutor inappropriately offered her opinions regarding witness credibility. The prosecutor informed the jury that "[t]he instruction tells you that you get to consider the appearance of the witness on the stand, their candor. Was [J.G.] candid? You bet he was." The prosecutor proceeded

5

to list various reasons to support the proposition that J.G. provided credible testimony before concluding that, "[J.G.] was candid with you." The prosecutor also commented on Lacey's credibility. She concluded her commentary by stating, "Candid? Absolutely not. Absolutely not."

¶19 Lacey further argues that the prosecutor made inappropriate comments regarding his guilt. The prosecutor told the jury during her opening statement that its "verdict . . . should be guilty, which [Lacey] is." The prosecutor also stated in her closing that the jury should "go back there and find [Lacey] guilty because, by God, he is." Lacey contends that the prosecutor's inclusion of the statement "which [Lacey] is" and "find [Lacey] guilty because, by God, he is" inappropriately encroached on the jury's exclusive domain of determining guilt or innocence. He argues that these statements suggested that the prosecutor possessed personal knowledge of Lacey's guilt.

¶20 Lacey further notes that the prosecutor made an inappropriate inference regarding his silence. She requested the jury to "consider what [Lacey] stayed away from in his testimony on direct exam." Lacey notes that a criminal defendant who exercises his right to remain silent cannot have his silence used against him. *Doyle v. Ohio*, 427 U.S. 610, 619-20 (1976). He concedes that his case is distinguishable from *Doyle* in light of Lacey's decision to take the stand. He nevertheless argues that the prosecutor's statement violates the spirit of *Doyle*.

¶21 The State counters that Lacey failed to object at trial to all the statements that he now claims prejudiced his case. The State argues that Lacey's failure to object at trial failed to preserve these issues for appeal. Lacey acknowledges that he made no objection at trial, but contends that this Court should apply plain error review. Lacey alternatively argues that

counsel's failure to object constituted ineffective assistance of counsel that warrants a new trial.

¶22    Lacey concedes that no single allegation of prosecutorial misconduct sufficiently warrants a new trial. He instead contends that we must review his allegations of prosecutorial misconduct in the aggregate. He argues that the cumulative effect of the prosecutor's statements warrants this Court undertaking plain error review and to determine whether his counsel provided ineffective assistance of counsel.

¶23    We first turn to the issue of whether this Court should engage in plain error analysis. We decline to consider, in a cumulative analysis, Lacey's argument that the prosecutor inappropriately requested that the jury "consider what [Lacey] stayed away from in his testimony on direct exam." Lacey supports his position by offering only the conclusory argument that the prosecutor's statement violates the spirit of the right to remain silent, while simultaneously acknowledging that Lacey waived this right when he testified. He provides no authority to support the notion that a prosecutor may not suggest negative inferences from a defendant's avoidance of issues when the defendant chooses to testify. He also offers no unique analysis as to how the prosecutor's statement implicates Lacey's right to remain silent in light of Lacey's voluntarily decision to testify. We decline to exercise plain error review with respect to the prosecutor's comments on those issues that Lacey avoided in his testimony.

¶24    The prosecutor's remaining comments may have been the subject of an appropriate objection. We note particularly the inappropriate nature of the prosecutor's reliance on God in her closing statements to support her claim that Lacey was guilty. Two equally troubling

implications arise from the prosecutor's comments: either the prosecutor has access to information to demonstrate Lacey's guilt that is not available to the jury, or the jury should accept her belief that Lacey is guilty based on an oath that she has sworn to a higher authority.

¶25   To invoke a higher power, under these circumstances, serves no purpose other than to seek an emotional, and prejudicial, response from the jury. *Sandoval v. Calderon*, 241 F.3d 765, 776 (9th Cir. 2000). Counsel should focus on the facts of a case, inferences that reasonably can be drawn from these facts, as instructed by the court, and application of the law to these facts and reasonable inferences. Counsel's unwarranted reliance on a higher authority diverts the jury's attention from the court's instruction on the law to be applied.

¶26   The prosecutor's comments do not stray so far from permissible, however, to satisfy our standard for the exercise of plain error review. The prosecutor buried her statements within an otherwise well supported, and permissible, commentary on the evidence and the credibility of witnesses. The context in which the prosecutor made the statements prevents us from determining that plain error review should be applied under the circumstances.

¶27   We turn next to whether Lacey received ineffective assistance of counsel. Article II, § 24 of the Montana Constitution guarantees a criminal defendant the right to effective assistance of counsel. *Robinson v. State,* 2010 MT 108, ¶ 12, 356 Mont. 282, 206 P.3d 403. A defendant bears the burden of proving that he was denied effective assistance by establishing that 1) counsel's performance fell below an objective standard of reasonableness, and 2) a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Robinson,* ¶ 12. We afford

8

deference to the trial counsel when reviewing counsel's performance. *Worthan v. State*, 2010 MT 98, ¶ 10, 356 Mont. 206, 232 P.3d 380.

¶28 Lacey has failed to satisfy the first element. Lacey's only alleged error relates to his counsel's failure to object to the prosecutor's statements during the opening and closing argument. This Court has determined, however, that failure to object does not qualify as unreasonable conduct by trial counsel. *Clausell v. State*, 2005 MT 33, ¶ 20, 326 Mont. 63, 106 P.3d 1175. To the contrary, we specifically have recognized that trial counsel may choose not to object during opening or closing statements for strategic purposes. *Clausell*, ¶ 20. This Court has noted that objections during opening and closing statements fall within the "wide range" of professional conduct. *Clausell*, ¶ 20. Lacey's counsel similarly may have declined to object to prevent drawing the jury's attention to the prosecutor's comments, believing the objection more harmful than the statement itself. Our deference to counsel's strategic decision on whether to object during opening and closing statements leads us to conclude that counsel's failure to object does not constitute unreasonable conduct.

¶29 *Did the State impermissibly change its legal theory of how Lacey committed sexual intercourse without consent?*

¶30 Lacey also argues that the State impermissibly expanded its theories of sexual intercourse without consent. Section 45-5-501(1)(a)(ii), MCA, provides that "without consent" can mean:

> (ii) the victim is incapable of consent because he is:
> (A) mentally defective or incapacitated;
> (B) physically helpless; or
> (C) less than 16 years old.

¶31 Lacey notes the State alleged in the information only that J.G. had been "incapable of consent" due to being asleep. The State more specifically argued at trial that J.G. had been incapable of consent due to being "physically helpless" or "mentally incapacitated" because of either sleep or intoxication. The court offered jury instructions that allowed the jury to convict Lacey based on either J.G. having been asleep or J.G. having been intoxicated during the encounters.

¶32 Lacey argues that the State impermissibly relied on the multiple definitions of "incapable of consent" at trial, contained in subsection (a) of § 45-5-501(1), MCA, without specifying which definition in the information. He relies heavily on our decision in *Spotted Eagle*. The State charged the defendant in *Spotted Eagle* with partner or family member assault. The State specifically alleged in the information that the defendant had caused bodily injury. *Spotted Eagle*, ¶ 2. The State proceeded to offer a jury instruction after the parties had presented all the testimony that the defendant alternatively had committed the offense by having caused reasonable apprehension of bodily injury. *Spotted Eagle*, ¶ 3.

¶33 We determined that the State's reliance on the additional theory of reasonable apprehension of bodily injury constituted a substantive change to the charge rather than simply a change in form. *Spotted Eagle*, ¶ 11. We concluded that "changing the essential elements change the nature and substance of the charge" against the defendant. *Spotted Eagle*, ¶ 11. The State's general citation to the criminal statute, rather than to the particular subsection, proved insufficient for the specific theory to be considered included in the information. *Spotted Eagle*, ¶ 12.

10

¶34 Lacey misplaces his reliance on *Spotted Eagle*. Our decision in *Spotted Eagle* rests on the premise that the State made no suggestion, before or during trial, that it would offer a reasonable apprehension of bodily injury theory. The State first raised the theory through the jury instruction at the close of evidence. Lacey cannot claim similar surprise here. As a general matter, we "read the information, and the affidavit in support thereof, as a whole to determine the sufficiency of the charging documents." *State v. Wilson*, 2007 MT 327, ¶ 25, 340 Mont. 191, 172 P.3d 1264. Lacey's argument neglects entirely the material available in the affidavit in support of the information.

¶35 The affidavit by Jane Mersen, a deputy county attorney, includes multiple references regarding J.G.'s intoxication. For example, J.G. stated that he had been "incredibly drunk" every time that Lacey made a sexual advance. J.G. also stated that he had been "incredibly trashed" when one instance of the sexual intercourse without consent occurred. The affidavit also noted that J.G. had been highly intoxicated during the other instance of sexual intercourse without consent. The affidavit itself contained many references to J.G.'s intoxication that constituted sufficient notice to Lacey that the State might rely upon subsection (B) of the "incapable of consent" statute. Section 45-5-501(1)(a)(ii), MCA.

¶36 Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ JAMES C. NELSON
/S/ JIM RICE