FILED

12/13/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0641

DA 14-0641

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2016 MT 323

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

JUSTIN DWAYNE KING,

      Defendant and Appellant.

| | |
|---|---|
| APPEAL FROM: | District Court of the Fourth Judicial District, In and For the County of Missoula, Cause No. DC 2013-564 Honorable Ed McLean, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

            Chad Wright, Chief Appellate Defender, Lisa S. Korchinski, Assistant Appellate Defender, Helena, Montana

      For Appellee:

            Timothy C. Fox, Montana Attorney General, Tammy K Plubell, Assistant Attorney General, Helena, Montana

            Kirsten H. Pabst, Missoula County Attorney, Patricia Bower, Deputy County Attorney, Missoula, Montana

Submitted on Briefs: November 10, 2016

Decided:

Filed:

          /S/ ED SMITH
             Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1    The Fourth Judicial District Court, Missoula County, conducted a jury trial for misdemeanor Assault and felony Assault with a Weapon against Justin Dwayne King (King).  The jury returned a verdict of guilty for felony Assault with a Weapon.  King appeals, alleging that the District Court improperly instructed the jury on the affirmative defense of justifiable use of force.  We affirm.

¶2    We address the following issue on appeal:

*Did the District Court properly instruct the jury on the affirmative defense of justifiable use of force, based on all the facts presented at trial?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3    In the fall of 2013, David Colaprete (Colaprete) and his girlfriend Mozelle Stewart (Stewart) moved to a homeless camp under the Reserve Street Bridge in Missoula, Montana.  Colaprete met King and invited him to camp with him and Stewart at their campsite.  One day, Colaprete found food in their shared cooler and ate it, believing that it had been left behind by a friend who had recently moved.  The food actually belonged to King, who began yelling at Colaprete and Stewart when he discovered his food had been eaten.  The relationship between Colaprete, Stewart and King became strained after this incident.  King became verbally abusive towards Stewart and continuously accused Colaprete and Stewart of taking his things.

¶4    On October 17, 2013, Colaprete left the campsite briefly and returned to find Stewart with a friend of King's.  Stewart was uncomfortable with the stranger's presence in their camp.  King was down by the river and Colaprete yelled down to him that he

needed to leave the campsite because it was not working out having him there. Colaprete and King began arguing and, when Colaprete finally turned around and began to walk away, King hit Colaprete repeatedly with a metal object. After hitting Colaprete several times with the object, King left the area. Colaprete called 911 and was taken by ambulance to a nearby hospital, where he received stitches and staples for his head injuries.

¶5 On October 18, 2013, King was stopped by the Missoula Police Department and arrested after he admitted to beating up a person with a pipe. He did not tell the officer that he was acting in self-defense. On November 5, 2013, the State filed an information charging King with felony Assault with a Weapon. King pled not guilty and filed notice of his intent to rely on the affirmative defense of justifiable use of force. At trial, he claimed that he attacked Colaprete with a metal rod because Colaprete had threatened him and he was afraid that Colaprete was about to attack him with a knife. He also testified that once the fight ensued, Colaprete grabbed him and wouldn't let him leave the area. Colaprete, on the other hand, testified that he did not threaten King and that he returned to his tent to deescalate the situation. He also testified that he was not armed with a knife and did not recall grabbing at King during the attack.

¶6 On the first day of trial, the District Court settled jury instructions. Along with other jury instructions on justifiable use of force, the District Court gave Jury Instruction No. 23 (Instruction 23), which read as follows:

> You are instructed that a person who is lawfully in a place or location and who is threatened with bodily injury or loss of life has no duty to retreat from a threat or summon law enforcement assistance prior to using force.

3

The court also gave Jury Instruction No. 25(a) (Instruction 25(a)) on the use of force by an aggressor, which read as follows:

> The use of force in defense of a person is not available to a person who purposely or knowingly provokes the use of force against himself, unless such force is so great that he reasonably believes that he is in imminent danger of death or serious bodily harm and that he has exhausted every reasonable means to escape such danger other than the use of force which is likely to cause bodily harm to the assailant.

King objected to this instruction, arguing that it misstated the law and that it contradicted Instruction No. 23 because the latter instruction created an obligation to retreat while the former instruction did not. The District Court overruled the objection and the jury returned a verdict of guilty on May 1, 2014.

## STANDARD OF REVIEW

¶7 We review a district court's decisions regarding jury instructions for an abuse of discretion. *State v. Lacey*, 2012 MT 52, ¶ 15, 364 Mont. 291, 272 P.3d 1288. "The standard of review of jury instructions in criminal cases is whether the instructions, as a whole, fully and fairly instruct the jury on the law applicable to the case." *State v. Dunfee*, 2005 MT 147, ¶ 20, 327 Mont. 335, 114 P.3d 217.

## DISCUSSION

¶8 *Did the District Court properly instruct the jury on the affirmative defense of justifiable use of force, based on all the facts presented at trial?*

¶9 King argues that the District Court abused its discretion when it gave Instruction 25(a) to the jury. He claims the instruction is inconsistent and contradictory to Instruction 23 and concerns a material issue in the case; namely, whether King had a duty

4

to retreat. The State contends that the court properly instructed the jury based upon the conflicting evidence King and the State presented at trial. We agree with the State.

¶10 This Court has held that "[t]he trial judge is under a duty to instruct the jury on every issue or theory finding support in the evidence, and this duty is discharged by giving instructions which accurately and correctly state the law applicable in a case." *State v. Erickson*, 2014 MT 304, ¶ 35, 377 Mont. 84, 338 P.3d 598 (citing *State v. Robbins*, 1998 MT 297, ¶ 36, 292 Mont. 23, 971 P.2d 359, *overruled on other grounds by State v. LaMere*, 2000 MT 45, ¶¶ 25, 61, 298 Mont. 358, 2 P.3d 204). A trial court does not abuse its discretion in giving an instruction if it is "supported either by direct evidence or by some logical inference from the evidence presented." *Erickson*, ¶ 35 (citing *State v. Hudson*, 2005 MT 142, ¶ 17, 327 Mont. 286, 114 P.3d 210). However, it is reversible error for a trial court to give conflicting instructions on a material issue. *Bohrer v. Clark*, 180 Mont. 233, 246, 590 P.2d 117, 124 (1978) (citing *Skeleton v. Great N. Ry. Co*, 110 Mont. 257, 100 P.2d 929 (1940)).

¶11 In this case, the District Court did not give conflicting instructions on the issue of King's duty to retreat; rather, the court properly instructed the jury based upon the conflicting evidence presented at trial. Indeed, based on the evidence discussed above, both parties provided enough evidence for the jury to consider whether: 1) King had no duty to retreat because he was justified in his use of force against Colaprete; or 2) King had a duty to retreat upon escalation of the fight because he was the initial aggressor. Colaprete testified that King hit him from behind, while King testified that he felt justified in his use of force because he thought Colaprete was about to retrieve and use a

5

weapon. King also testified that Colaprete grabbed him during the fight, while Colaprete testified that he did not remember doing so.

¶12 Instruction 23 and Instruction 25(a) both expressly derive from Montana's statutory law on justifiable use of force. The former instruction reflects the language of § 45-3-110, MCA, and addresses a person's duty to retreat when that person is threatened with bodily injury or loss of life and that person is not the initial aggressor. The latter instruction reflects the language of § 45-3-105(2)(a), MCA, and addresses a person's duty to retreat when that person is the initial aggressor and provokes the use of force against him. Given the conflicting testimonial evidence in this case, the District Court had a duty to provide both instructions in order to allow the jury to decide if either factual account was credible. To do otherwise would have invaded the province of the jury as a rational finder of fact. *See State v. Thorp*, 2010 MT 92, ¶ 24, 356 Mont. 150, 231 P.3d 1096 ("This Court consistently has held that the determination of the credibility of witnesses and the weight given to their testimony rests solely within the province of the jury."). Based upon all of the evidence King and the State presented at trial, we conclude that the District Court properly instructed the jury on the law of justifiable use of force.

## CONCLUSION

¶13 For the foregoing reasons, we affirm.

/S/ MICHAEL E WHEAT

6

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ JIM RICE