FILED

05/13/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0256

DA 24-0256

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 97

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

CHARLES DAVID AMENT,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DC-22-310
Honorable Dan Wilson, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Tammy A. Hinderman, Division Administrator, Michael Marchesini,
Managing Appellate Defender, Helena, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Roy Brown, Assistant
Attorney General, Helena, Montana

          Travis R. Ahner, Flathead County Attorney, Kalispell, Montana

Submitted on Briefs:  January 30, 2025

Decided:  May 13, 2025

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Charles Ament appeals his Flathead County jury conviction for felony DUI. He alleges various issues on appeal, many of which were not preserved before the trial court. We consider the following restated issues on appeal:

1. *Whether the District Court erred when it did not allow Ament more time to enter a plea.*

2. *Whether the admission of evidence on Ament's belligerence warrants reversal for plain error.*

3. *Whether the District Court's comments during Ament's closing argument warrant reversal for plain error.*

4. *Whether the jury instruction on the presumption of innocence warrants reversal for plain error.*

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 The State charged Ament with felony driving under the influence (DUI), fourth or subsequent offense. While represented by defense counsel at arraignment, Ament requested additional time before entering a plea. The District Court allowed him until the following day, and Ament entered a plea of not guilty.

¶3 At a pretrial hearing, the court granted Ament's motion to represent himself. The court advised Ament that the public defender would remain as standby counsel but could not interrupt the proceedings to issue advice. Ament represented himself at trial with standby counsel.

¶4 Montana Highway Patrol Trooper Jon Raymond conducted the DUI investigation. He testified during trial to the following: he responded to a single vehicle crash on

2

Highway 2 in Flathead County; Ament's breath smelled of alcohol; and Ament had difficulty balancing, made strange statements, thought he was in a different location, admitted to drinking three beers, and asked Trooper Raymond not to investigate him for a DUI. Trooper Raymond conducted field sobriety tests that indicated Ament was under the influence of alcohol and arrested him for DUI. After obtaining a warrant, Trooper Raymond obtained a blood draw that showed a 0.187 blood alcohol content.

¶5    Trooper Raymond conducted a pat-down to check Ament for weapons after arresting him. Trooper Raymond testified that Ament became agitated and started struggling and that Trooper Raymond sustained a cut on the thumb. Ament objected to Trooper Raymond's testimony as leading, which the judge overruled. Ament did not testify or offer any witnesses. During closing argument, however, Ament began to discuss his version of the facts. The State objected to "facts not in evidence." The court sustained the objection and stated the following:

> THE COURT: Ladies and gentlemen of the jury, Mr. Ament elected not to testify, that was his right; you've been instructed on the impact of that. He is not permitted to use his closing argument as an opportunity to say things to you of his own knowledge that he could have said during the trial after having been sworn under oath and testifying as a witness. Mr. Ament may not present to you during his argument such statements by way of avoiding being sworn as a regular witness and testifying under oath and being subject to cross-examination. Mr. Ament just made a statement to you to the effect of matters that are evidently within his realm of personal knowledge[.]
>
> .   .   .
>
> You are instructed to disregard his statement of personal knowledge not made under oath during this trial. If he makes one during this closing argument—the last statement that he made to you was such a description—you are to disregard it. Mr. Ament, you may continue subject to that ruling.

3

MR. AMENT: Correct, Your Honor. I apologize. I believe the video said he was fishing up the North Fork. Anyway, I've not one clue how the truck ended up 26 miles exactly from the previous destination

THE STATE: Judge

THE COURT: The State's objection is sustained. Mr. Ament is attempting to make a statement of his personal knowledge [or] belief here in the closing argument, as opposed to having said it under oath during the trial, which he had an opportunity to do so. When he makes a statement to you that he has no knowledge of how the truck came to be where it was found you are to disregard that statement. It is not proper for . . . your consideration, it must not enter into your deliberations in any way. Continue, subject to this ruling, Mr. Ament, which you are now fully aware of and you were previously made aware of.

MR. AMENT: Okay.

¶6 The jury found Ament guilty of DUI. Ament appealed and filed an opening brief on his own behalf. After the State responded, Ament requested appointment of counsel. The Appellate Defender Division appointed counsel, who filed a reply. Ament's reply brief identifies four distinct issues: first, the District Court did not provide him sufficient time to consider the entry of his plea at arraignment; second, the court should not have permitted Trooper Raymond's testimony about Ament's conduct during the DUI investigation; third, the court's comments during his pro se closing arguments denied him a fair trial; and fourth, the District Court erred in giving a pattern preliminary jury instruction on the presumption of innocence.[1]

---

[1] In his opening brief, Ament generally references the District Court's prejudice and bias but does not identify specific examples in the record. "[I]t is not this Court's obligation to conduct legal research on appellant's behalf, to guess as to his precise position, or to develop legal analysis that may lend support to his position." *State v. Hicks*, 2006 MT 71, ¶ 22, 331 Mont. 471, 133 P.3d 206. We analyze the potential for prejudice to Ament within the specific issues discussed below, but our review of the record does not reveal evident bias or prejudice, and we do not address this claim further.

4

## STANDARD OF REVIEW

¶7 We review a district court's discretionary rulings and decisions regarding jury instructions for abuse of discretion. *State v. Duncan*, 2008 MT 148, ¶ 37, 343 Mont. 220, 183 P.3d 111; *State v. King*, 2016 MT 323, ¶ 7, 385 Mont. 483, 385 P.3d 561 (citing *State v. Lacey*, 2012 MT 52, ¶ 15, 364 Mont. 291, 272 P.3d 1288). "A court abuses its discretion if it acts arbitrarily without the employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice." *State v. Passmore*, 2010 MT 34, ¶ 51, 355 Mont. 187, 225 P.3d 1229 (citation omitted). "The standard of review of jury instructions in criminal cases is whether the instructions, as a whole, fully and fairly instruct the jury on the law applicable to the case." *King*, ¶ 7 (citation omitted).

¶8 "This Court generally does not address issues raised for the first time on appeal." *State v. George*, 2020 MT 56, ¶ 4, 399 Mont. 173, 459 P.3d 854 (citing *State v. Hatfield*, 2018 MT 229, ¶ 15, 392 Mont. 509, 426 P.3d 569). Under the common law plain error doctrine, we may exercise discretion to review unpreserved claims alleging errors that implicate a defendant's fundamental rights. *George*, ¶ 4 (citing *State v. Akers*, 2017 MT 311, ¶ 13, 389 Mont. 531, 408 P.3d 142).[2]

---

[2] We also do not consider arguments first raised in a party's reply brief on appeal. *State v. Pengra*, 2000 MT 291, ¶ 13, 302 Mont. 276, 14 P.3d 499. Each of the four arguments counsel makes in the reply brief, however, finds general footing in Ament's opening brief. Affording some latitude to his then-self-represented status, we conclude that Ament's arguments are entitled to consideration.

## DISCUSSION

¶9 "To properly preserve an issue or claim for appeal, it is necessary that the issue or claim be timely raised in the first instance in the trial court." *State v. Norman*, 2010 MT 253, ¶ 16, 358 Mont. 252, 244 P.3d 737. A party must set forth more than general assertions to preserve an issue. *State v. Montgomery*, 2010 MT 193, ¶ 11, 357 Mont. 348, 239 P.3d 929 (citations omitted). This brings the alleged error to the court's attention, thus allowing the court to prevent or correct any error at the first opportunity. *State v. West*, 2008 MT 338, ¶ 17, 346 Mont. 244, 194 P.3d 683. "[I]t is fundamentally unfair to fault the trial court for failing to rule correctly on an issue it was never given the opportunity to consider." *State v. Winzenburg*, 2022 MT 242, ¶ 29, 411 Mont. 65, 521 P.3d 752 (quoting *West*, ¶ 16). Though a party may not assert a new legal theory on appeal, we will "permit[] parties to bolster their preserved issues with additional legal authority or to make further arguments within the scope of the legal theory articulated to the trial court." *Montgomery*, ¶ 12.

¶10 "If the error is preserved, we apply a harmless error standard of review, and the State has the burden of demonstrating the error was harmless. Conversely, if a defendant fails to properly preserve his or her issue for appeal, we apply the plain error standard of review, and the defendant has the burden of proof." *Akers*, ¶ 20.

¶11 A defendant urging plain error reversal "bears the burden of firmly convincing this Court" that (1) the claimed error implicates a fundamental right and (2) failure to review the alleged error may result in a manifest miscarriage of justice, leave unsettled the question

of the proceedings' fundamental fairness, or compromise the integrity of the judicial process. *George*, ¶ 5 (citing *Akers*, ¶ 13; *State v. Finley*, 276 Mont. 126, 137, 915 P.2d 280, 215 (1996) (*overruled in part on other grounds by State v. Gallagher*, 2001 MT 39, ¶ 21, 304 Mont. 215, 19 P.3d 817)). Only then may we invoke "our discretion and reverse the trial court." *George*, ¶ 5 (citing *State v. Favel*, 2015 MT 336, ¶ 28, 381 Mont. 472, 362 P.3d 1126). Reversing under plain error review is reserved for exceptional cases. *State v. Welch*, 2024 MT 42, ¶ 16, 415 Mont. 343, 544 P.3d 225 (citing *State v. Robertson*, 2015 MT 266, ¶ 13, 381 Mont. 75, 364 P.3d 580). We use it sparingly on a case-by-case basis after considering the "totality of circumstances of each case." *George*, ¶ 5 (quoting *Akers*, ¶ 13).

¶12    *1. Whether the District Court erred when it did not allow Ament more time to enter a plea.*

¶13    Section 46-12-203, MCA, states, "[i]f on arraignment the defendant requires it, the defendant must be allowed a reasonable time, not less than 1 day, to answer or otherwise plead to the indictment, information or complaint." If a defendant refuses to plead, "the court shall enter a plea of not guilty." Section 46-12-204, MCA. When a court stays within statutory parameters, whether it granted a "reasonable time" to plead is a discretionary ruling. *See State v. Haller*, 2013 MT 199, ¶ 5, 371 Mont. 86, 306 P.3d 338 (reasoning under a different statute that "a district court's determination of what constitutes a reasonable time" is reviewed for abuse of discretion).

¶14    Ament argues that the District Court erred in allowing him only one day to enter his plea after he requested two weeks. This Court does not have the transcript of the

7

arraignment on appeal. The minute entry states that Ament requested "additional time," and the court granted one day. Ament then proceeded to enter a plea of not guilty. Ament argues that he preserved this issue for appeal because he brought it to the court's attention, and the trial court had the opportunity to consider the issue. Ament emphasizes that—outside the minimum of one day—the statute's mandatory language requires that the defendant be allowed a reasonable time, and we should consider his argument under this "reasonable time" requirement. The State counters that Ament did not properly preserve the issue. Additionally, the State contends that the court complied with the statutory requirements and that Ament does not offer any reason for the requested additional time.

¶15 The record on appeal reflects that Ament requested additional time, and the judge granted him one day. The judge "was given an opportunity" to consider Ament's request and make a ruling. *Montgomery*, ¶ 11. Ament preserved the issue for appeal.

¶16 Ament is correct that the one-day requirement is "a floor, not a ceiling." The court did not, however, go below this floor. It complied with the statutory time frame. Generally, what constitutes a reasonable time is a "fact-based inquiry." *See State v. Seyler*, 2024 MT 300, ¶ 10, 419 Mont. 242, 560 P.3d 608 (analyzing reasonable time between a defendant's initial appearance and judicial determination of probable cause). Other than generally asserting that the time granted was not reasonable, Ament has not shown specific facts demonstrating why he needed additional time or presented a sufficient record of the arraignment hearing from which this Court could adequately review the claimed error. Ament has not demonstrated that the District Court's adherence to the statutory procedure

under § 46-12-203, MCA, constituted an abuse of discretion. Though Ament's opening brief suggests that the court's refusal of more time induced him to enter a not guilty plea, he does not pursue that claim in reply, and the record he has provided does not support such a claim or show that the court's grant of one additional day was unreasonable under the circumstances.

¶17    *2. Whether the admission of evidence on Ament's belligerence warrants reversal for plain error.*

¶18    Ament asserts that Trooper Raymond's testimony about Ament's belligerence during the pat-down and Trooper Raymond's thumb injury were unrelated to the DUI charge, not relevant to any permissible purpose, impermissible bad acts evidence under M. R. Evid. 404(b), and more prejudicial than probative under M. R. Evid. 403. Ament argues that he preserved the issue when he objected as "leading." He stresses that courts may grant wider latitude to pro se litigants and make reasonable accommodations to ensure they are fairly heard, asserting that the District Court should have liberally construed his objection.

¶19    The State counters that Ament failed to preserve this claim and this Court must apply plain error review. His claim fails, the State asserts, because the testimony concerned conduct during the DUI investigation and Ament has provided only abbreviated transcripts of the trial on appeal, thus making his claim difficult to analyze.

¶20    M. R. Evid. 103(a)(1) requires "a timely objection . . . stating the specific ground of the objection, if the specific ground was not apparent from the context[.]" In *State v. Strizich*, we held that the defendant had not preserved a Rule 403 objection (more

9

prejudicial than probative) on appeal when he had raised only Rule 402 (relevance) and Rule 404(b) (character evidence) objections at the trial court. *State v. Strizich*, 2021 MT 306, ¶ 29, 406 Mont. 391, 499 P.3d 575. We cited to *Busta v. Columbus Hospital,* a case where "we specifically declined to review a Rule 403 argument on appeal [when] the defendant made a relevance objection but not a Rule 403 objection at trial." *Strizich*, ¶ 29 (citing *Busta v. Columbus Hosp.*, 276 Mont. 342, 353-54, 916 P.2d 122, 129 (1996)). Strizich preserved his objections under Rules 402 and 404(b) because they were "apparent from the context" in the trial court based on what the defendant said in his objection and the trial court's reasoning in its ruling. *Strizich*, ¶ 31. But Strizich's argument about unfair prejudice "present[ed] a new theory of inadmissibility for the first time on appeal; this we consistently do not allow." *Strizich*, ¶ 32.

¶21 In this case, Ament's objection was "leading." The District Court responded, "it's not leading." Like in *Strizich*, nothing in the form of Ament's objection, the court's response, or the context of the proceedings indicates an objection based on the evidence's prejudicial effect under Rule 403 or impermissible bad acts evidence under Rule 404(b). We have encouraged courts to "grant wider latitude to pro se litigants" if it does not prejudice the other party and to make "reasonable accommodations to ensure self-represented litigants" are fairly heard. *State v. Daniels*, 2017 MT 163, ¶ 17, 388 Mont. 89, 397 P.3d 460. But "[s]elf-represented litigants are still required to comply with the same substantive law and procedural requirements as represented litigants." *Daniels*, ¶ 20 (quoting M. C. Jud. Cond. 2.2 cmt 5). Even considering Ament's pro se status, he did not

10

preserve the issue for appeal and thus plain error review is the standard we apply. Under plain error review, Ament must enunciate the fundamental right implicated by the alleged error. *Akers*, ¶ 13. Ament has not articulated any fundamental right that was impacted by the evidentiary ruling and thus has not met his burden to invoke our review for plain error.

¶22 Ament raises several arguments regarding the potential prejudicial effect of Trooper Raymond's testimony and the applicability of the transaction rule. The State argues that the video and Trooper Raymond's testimony were not used as improper character evidence but instead were relevant to explain the interaction and were probative of Ament's intoxication—an essential element of DUI. Section 61-8-1002(1)(a), MCA; *State v. Rowe*, 2024 MT 37, ¶ 26, 415 Mont. 280, 543 P.3d 614 (explaining that the transaction rule allows evidence that is intertwined with the alleged criminal conduct, relevant to an essential element of the offense, and provides a complete picture necessary for a full understanding of the transaction at issue).

¶23 The record before this Court does not show that this testimony prejudiced Ament. As the State points out, the evidence at trial included—among other things—Ament's initial indicators of impairment, his admission that he drank three beers, the single-vehicle accident, his confusion about his location, his attempts to ask Trooper Raymond to not pursue a DUI investigation, the field sobriety test results, and his blood alcohol content of 0.187. Ament's arguments highlight the very reason parties should contemporaneously object to these issues. All are arguments that would have been proper for consideration by

11

the trial court but are fundamentally unfair for this Court to consider for the first time on appeal. *See West*, ¶ 17.

¶24 Ultimately, admission of evidence is within the trial court's discretion, *Strizich*, ¶ 17, and Ament has not demonstrated how the evidence denied him a fundamental right. Our failure to reverse under plain error review would not call into question the fairness of the proceedings. *Akers*, ¶ 13. Under the record Ament submitted, his belligerence with the officer was not belabored in direct examination or in closing argument. Ament's behavior during the encounter was relevant to the issue of his impairment, and Ament has not met his burden to show that unfair prejudice from the admission of this evidence justifies reversal for plain error.

¶25 *3. Whether the District Court's comments during Ament's closing argument warrant reversal for plain error.*

¶26 Ament argues that the trial court's comments violated his fundamental right against self-incrimination and the "corresponding constitutional due process right to not be punished for exercising that right." He argues that failure to review the issue would compromise the integrity of the judicial process because the District Court repeatedly commented on his decision not to testify when it simply could have sustained the objection and admonished the jury to disregard any attempt to introduce new facts. Ament contends that the District Court overstepped its role of simply regulating the proceedings. The State responds that Ament fails to meet his burden, and we should decline to exercise plain error review. It points out that a party may not introduce facts outside the record during closing

12

and that the District Court properly instructed "the jury to disregard Ament's repeated attempts to add his own non-record facts in closing argument."

¶27 Defendants have a constitutional right not to testify at trial under the Fifth Amendment of the U.S. Constitution and Article II, Section 25, of the Montana Constitution. "The Fifth Amendment . . . forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." *Griffin v. California*, 380 U.S. 609, 615, 85 S. Ct. 1229, 1233 (1965).

¶28 In *Griffin v. California*, both the court and prosecutor commented on Griffin's decision not to testify at trial. *Griffin*, 380 U.S. at 609-11, 85 S. Ct. at 1230-31. Specifically, the trial court stated that although a defendant has a constitutional right not to testify, the jury could consider his failure to testify where he could reasonably be expected to deny or explain the evidence against him because of facts within his knowledge. *Griffin*, 380 U.S. at 610, 85 S. Ct. at 1230. The U.S. Supreme Court reasoned that defendants in a criminal case enjoy the presumption of innocence, and there are myriad reasons—outside guilt alone—why a person may not want to take the witness stand and testify. *Griffin*, 380 U.S. at 613, 85 S. Ct. at 1232. "What the jury may infer, given no help from the court, is one thing. What it may infer when the court solemnizes the silence of the accused into evidence against him is quite another." *Griffin*, 380 U.S. at 614, 85 S. Ct. at 1233. The Fifth Amendment outlaws "comment on the refusal to testify" because it "is a penalty imposed by courts for exercising a constitutional privilege." *Griffin*, 380 U.S. at 614, 85 S. Ct. at 1232-33.

13

¶29 Because the District Court's comments to the jury touched on Ament's decision not to offer testimony, the comments implicate the fundamental right of a criminal defendant to not testify against himself in a criminal proceeding. U.S. Const. amend. V; Mont. Const. art. II, § 25. We therefore consider Ament's claim for plain error.

¶30 Ament must firmly convince this Court that failure to exercise our discretion would result in a manifest miscarriage of justice, leave unsettled the question of the proceedings' fundamental fairness, or compromise the integrity of the judicial process. *George*, ¶ 5. "In making this inquiry, 'we consider the totality of circumstances of each case.'" *Favel*, ¶ 23 (quoting *State v. Lindberg*, 2008 MT 389, ¶ 34, 347 Mont. 76, 196 P.3d 1252). Whether the alleged error prejudiced the defendant "permeates throughout our analysis in nearly every plain error review case." *Favel*, ¶ 45 (McKinnon, J., concurring).

¶31 Ament cites *State v. Wagner* in support of his argument. *State v. Wagner*, 2019 MT 256, 352 Mont. 1, 215 P.3d 20. *Wagner*, like much of our case law analyzing plain error on Fifth Amendment claims, considered comments by a prosecutor at trial on a defendant's silence after invoking his *Miranda* rights. *Wagner*, ¶ 2; *e.g., State v. Godfrey*, 2004 MT 197, ¶ 31, 322 Mont. 254, 95 P.3d 166; *State v. Upshaw*, 2006 MT 341, ¶ 15, 335 Mont. 162, 153 P.3d 579. Commonly referred to as *Doyle* error, when a prosecutor's questions are "designed to create an inference" that remaining silent after invoking *Miranda* rights is evidence of guilt, this violates the right to remain silent and may constitute plain error by raising questions about the fundamental fairness of the trial. *Wagner*, ¶¶ 21-22; *see also Doyle v. Ohio*, 426 U.S. 610, 96 S. Ct. 2240 (1976). Separately, we have held that a

14

prosecutor's comment on the lack of defense evidence implicates the Fifth Amendment, and is improper, when the comment implicitly refers to evidence that could come only from the defendant himself. *Town of Columbus v. Harrington*, 2001 MT 258, ¶¶ 18, 21, 307 Mont. 215, 36 P.3d 937.

¶32     Importantly, in this context, the District Court was responding to Ament's improper attempt to testify in his closing argument and introduce facts not in evidence. The court did not instruct or suggest to the jury that Ament's decision not to testify was "evidence of guilt." *Griffin*, 380 U.S. at 615, 85 S. Ct. at 1233; *Wagner*, ¶ 21. Ament emphasizes that the court said more than it needed to direct the jury to disregard Ament's assertions of fact. We do not disagree. In context, however, the judge's comments focused on instructing Ament to limit his discussion to evidence in the record. When Ament again began to inject his own account of the facts, the judge firmly repeated that it was improper for him to use his argument to offer testimony. Unlike *Wagner*, nothing indicates that the court's comments prejudiced Ament, were intended to create any inference of guilt, or created any inference of guilt. *Wagner*, ¶ 21. Unlike *Griffin*, the judge did not improperly instruct the jury on inferences it could draw from a person's right to remain silent. *Griffin*, 609 U.S. at 610, 85 S. Ct. at 1230. Instead, the court explicitly reminded the jury that they had been advised of Mr. Ament's right to remain silent and the impact of this right. The court twice instructed the jury on this point. In Instruction 4, among the instructions given prior to the presentation of evidence, the court instructed the jury while explaining the presumption of innocence that Ament was "not required to prove his innocence or present any evidence."

15

Instruction 12, given at the close of trial, told the jury that Ament had a constitutional right not to testify, that it could not draw any inference from the defendant's choice not to testify, and that it "must neither discuss this matter nor permit it to enter into your deliberations in any way." *E.g.*, *Mont. Crim. Jury Instr.* 1-122 (2022).

¶33    The District Court's comments during Ament's closing argument reminded the jury that it must consider only the evidence entered during trial and instructed that Ament could not use closing arguments as a vehicle to testify to the facts. To the extent this was "a comment on Ament's failure to testify," Dissent, ¶ 48, the court's remarks did not disparage or criticize his right to remain silent or in any way suggest guilt from his exercise of that right. Ament not only was *speaking* at the time the court sustained the State's objection but was essentially attempting to testify. The court did not "solemnize[] the silence of the accused into evidence against him." *Griffin*, 380 U.S. at 614, 85 S. Ct. at 1233. The court did not step outside its role of regulating the proceedings, as the court's role also inherently included instructing the jury that it could not consider Ament's closing argument to be evidence. That the court placed emphasis on Ament's decision not to put his statements in evidence through sworn testimony does not render its choice of words plain error requiring a new trial when they did nothing to suggest inference of guilt from silence. *See Godfrey*, ¶ 37 (reasoning that though the prosecutor's comments during cross-examination and closing were inadvisable, they were a comment on the defendant's story, not his silence).[3]

---

[3] In *State v. Wilkins*, the District Court asked the pro se defendant repeatedly before the jury if he wished to take the stand, reminding the defendant that he had a right to do so. *State v. Wilkins*, 229 Mont. 78, 80, 746 P.2d 588, 589 (1987). We decided *Wilkins* before *State v. Finley*, 276 Mont. 126, 915 P.2d 208 (1996)—the seminal case enunciating the rule we use in common law plain

¶34 We have declined to reverse on plain error even when the alleged error implicated a fundamental right. *E.g.*, *Norman*, ¶ 18; *George*, ¶¶ 7, 14. This reflects the principle that plain error review is invoked sparingly and only to prevent manifest injustice. *Akers*, ¶ 13. Without a complete record of the trial, our ability to examine the claimed error in the totality of the circumstances is hampered.[4] Based on the record presented, however, we are not "firmly convinced" that the judge's comments compromised the fundamental fairness of the trial or the integrity of the judicial process to such an extent that it requires reversal. *Strizich*, ¶ 39 (citing *George*, ¶ 5); accord *Welch*, ¶ 26. Overall, the available transcript reflects that the judge handled Ament's pro se status appropriately, considering several objections outside the jury's presence, explaining the court's rulings, and instructing the jury correctly on the presumption of innocence and the State's burden of proof. On this record and under our discretion when applying plain error review, we decline to reverse. *George*, ¶ 5 (citing *Favel*, ¶ 28).

¶35 *4. Whether the jury instruction on the presumption of innocence warrants reversal for plain error.*

---

error review. The *Wilkins* Court applied the "plain error doctrine" to find a fundamental right was implicated. *Wilkins*, 299 Mont. at 81, 746 P.2d at 589. The Court went on, however, to apply a harmless error standard to reverse. *Wilkins*, 299 Mont. at 82, 746 P.2d at 590. We find *Wilkins* distinguishable. Despite invoking the plain error doctrine, it ultimately applied a lesser standard (harmless error) than the factors enunciated by *Finley*. *Finley*, 276 Mont. at 137, 915 P.2d at 215 (failure to review would result in a manifest miscarriage of justice, leave unsettled the question of the trial's fundamental fairness, or compromise the integrity of the judicial process). More so, the district court's repeated emphasis in front of the jury on Wilkins's right to testify was a direct comment on the defendant's silence, *Wilkins*, 229 Mont. at 80, 746 P.2d at 589, whereas here, the judge emphasized limiting the evidence to the evidentiary record.

[4] Ament filed portions of his transcript pro se. Upon appointed counsel's appearance, no additional transcripts were submitted.

¶36 Last, Ament asserts error in the jury instruction on the presumption of innocence. The trial court instructed the jury:

> The Defendant is presumed to be innocent of the charge against him. This presumption remains with him throughout every stage of the trial and during your deliberations on the verdict. It is not overcome unless from all the evidence in the case you are convinced beyond a reasonable doubt that the Defendant is guilty. The Defendant is not required to prove his innocence or present any evidence.

Ament argues the instructions are not identical to § 46-16-204, MCA. Section 46-16-204, MCA, states: "A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether the defendant's guilt is satisfactorily shown, the defendant must be found not guilty."

¶37 First, the available record does not demonstrate that Ament preserved this alleged error. As the State highlights, Ament has not shown that he filed any proposed jury instructions or objected to the given instructions. *See* M. R. App. P. 8(2) (It is the appellant's duty "to present the supreme court with a record sufficient to enable it to rule upon the issues raised."). Because the record we have on appeal indicates that Ament did not object to the jury instructions, we apply plain error review.

¶38 Ament argues that the error implicated the presumption of innocence emanating from the constitutional right to trial by a fair and impartial jury. He asserts that the jury instructions undercut the presumption of innocence.

¶39 Errors in jury instructions may implicate fundamental rights. *E.g.*, *Norman*, ¶ 18. "The inquiry, viewing the instructions as a whole, is whether the district court fully and fairly instructed the jury on the applicable law." *State v. Birthmark*, 2013 MT 86, ¶ 10,

18

369 Mont. 413, 300 P.3d 1140 (citing *State v. Dethman*, 2010 MT 268, ¶ 12, 358 Mont. 384, 245 P.3d 30).  In *State v. Williams*, the jury instructions at trial deviated from the model jury instruction by omitting an element of the offense.  *State v. Williams*, 2015 MT 247, ¶ 14, 380 Mont. 445, 358 P.3d 127.  This Court acknowledged that the instruction was defective but declined to reverse for plain error after reasoning that the error did not implicate due process or compromise the integrity of the judicial process.  *Williams*, ¶ 17.

¶40    Unlike *Williams*, the jury instructions that Ament contests are modeled exactly on the Montana Criminal Jury Instructions.  *Mont. Crim. Jury Instr.* 1-104 (2022).  This instruction reflects the presumption of innocence as a fundamental right implicit in due process guarantees and the right to a fair trial.  *See State v. Miller*, 2022 MT 92, ¶ 28, 408 Mont. 316, 510 P.3d 17.  Ament does not meet his burden to show this Court how the pattern criminal jury instruction implicated his fundamental right on these facts.  The jury instructions did not call into question his presumption of innocence; taken as a whole, they fully and fairly instructed the jury on a defendant's presumption of innocence.  *Strizich*, ¶ 49.  Ament is not entitled to a new trial.

## CONCLUSION

¶41    The District Court did not abuse its discretion during the arraignment process when considering Ament's request for additional time.  The remaining three issues—Trooper Raymond's testimony, the District Court's comments during closing, and the jury instructions—are all subject to plain error review.  Under our plain error review standards,

19

Ament has not met his burden to demonstrate that a new trial is warranted. The District Court judgment is affirmed.

/S/ BETH BAKER

We Concur:

/S/ CORY J. SWANSON
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE

Justice Laurie McKinnon, dissenting.

¶42　I would exercise plain error review and reverse based on the District Court's improper comments to the jury on Ament's decision not to testify.

¶43　To understand the magnitude of the error, the judge's rulings during Ament's closing argument must be considered in their entirety.

> THE COURT: Very well, [Prosecutor]. Mr. Ament, you may make your closing argument when you're ready.
>
> MR. AMENT: Thank you, Your Honor. Ladies and gentlemen of the jury, thanks for hearing the State's claim against me, Charles David Ament. I heard the same things you heard throughout the trial. The evidence is persuading it caused a drunk man to roll his vehicle? Was that drunk man alone? I don't know. It's probable. And aside from his drunken statements could there have been a second driver or, you know, a driver aside. A state of mind without reasoning due to drugs not being intelligently or knowingly ingested. I'll tell you, the day I went fishing I dropped—
>
> MR. AHNER: Objection, facts not in evidence.
>
> MR. AMENT: Judge, I—

THE COURT: **Hold on, Mr. Ament. Ladies and gentlemen of the jury, Mr. Ament elected not to testify, that was his right; you've been instructed on the impact of that. He is not permitted to use his closing argument as an opportunity to say things to you of his own knowledge that he could have said during the trial after having been sworn under oath and testifying as a witness. Mr. Ament may not present to you during his argument such statements by way of avoiding being sworn as a regular witness and testifying under oath and being subject to cross-examination. Mr. Ament just made a statement to you to the effect of matters that are evidently within his realm of personal knowledge—**

MR. AMENT: Your Honor—

THE COURT: **No. Mr. Ament, I'll tell you one thing, you don't have the authority to interrupt me in this courtroom—**

MR. AMENT: Okay.

THE COURT: **—if that's not evident to you at this point it should be abundantly clear now. You are instructed to disregard his statement of personal knowledge not made under oath during this trial. If he makes one during this closing argument—the last statement that he made to you was such a description—you are to disregard it. Mr. Ament, you may continue subject to that ruling.**

MR. AMENT: Correct, Your Honor. I apologize. I believe the video said he was fishing up the North Fork. Anyway, I've not one clue how the truck ended up 26 miles exactly from the previous destination—

MR. AHNER: Judge—

THE COURT: **The State's objection is sustained. Mr. Ament is attempting to make a statement of his personal knowledge of belief here in the closing argument, as opposed to having said it under oath during the trial, which he had an opportunity to do so. When he makes a statement to you that he has no knowledge of how the truck came to be where it was found you are to disregard that statement. It is not proper for your consideration, it must not enter into deliberations in any way. Continue, subject to this ruling, Mr. Ament, which you are now fully aware of and you were previously made aware of.**

MR. AMENT: Okay. The State has a single-vehicle accident with a drunken person being evacuated from the vehicle. Was he alone? Were there other factors involved? It may not be probable, but it is possible. And besides the ramblings of a drunken person, or past self, that one cannot ascertain or truly trust, can anyone trust a drunken person's syntax? Certainly you can't trust a drunken person's actions. I guess it's time to act. I'm going to ask you to take into deliberations the abilities to—or the possibilities that could have happened that day. Thank you for your time.

THE COURT: Very well. That concludes the Defendant's closing argument.

¶44 Ament had a constitutional right not to testify at his trial. U.S. Const. amend. V ("No person shall . . . be compelled in any criminal case to be a witness against himself."); Mont. Const. art. II, § 25 ("No person shall be compelled to testify against himself in a criminal proceeding."). And Ament exercised his right not to testify. Absent from our precedent are any cases where a trial *judge*, as here, blatantly and purposefully points out to the jury that the defendant could have testified but chose not to. We may be informed, however, by our precedent which has established there was reversible error when the prosecutor failed to respect a defendant's constitutional right against self-incrimination. It cannot be reasonably disputed that the error is magnified when it is committed by the trial judge.

¶45 We have held that in accordance with a defendant's federal and Montana constitutional rights against self-incrimination, a prosecutor generally may not directly or indirectly comment on the silence of a defendant after he or she has asserted the right to remain silent, whether in regard to not testifying at trial or not speaking with police following a *Miranda* advisory. Comments on a defendant's failure to testify deny the accused the privilege against self-incrimination "when the language used is manifestly

22

intended or is of such a character that the jury would naturally and necessarily take it as a comment on the failure of the accused to testify." *State v. Dawson*, 233 Mont. 345, 356, 761 P.2d 352, 359 (1988) (quoting *State v. Anderson*, 156 Mont. 122, 125, 476 P.2d 780, 782 (1970)). In *Town of Columbus v. Harrington*, 2001 MT 358, ¶¶ 18-21, 307 Mont. 215, 36 P.3d 937, the prosecutor commented that there was no evidence contradicting the testimony of the state's witness. We held that the comment was an improper comment on the defendant's right to remain silent because the comment implicitly referred to missing evidence that could only have come from the testimony of the defendant. Similarly, in *State v. Hart*, 154 Mont. 310, 312-16, 462 P.2d 885, 887-89 (1969), a prosecutor's comment that defense counsel failed to "offer any evidence to controvert [the] story" told by a state's witness was improper where the contrary evidence could have come only from the non-testifying defendant. Improper comment on a defendant not testifying "is a penalty imposed by courts for exercising a constitutional privilege." *Griffin v. California*, 380 U.S. 609, 614, 85 S. Ct. 1229, 1232-33 (1965) (concluding a prosecutor's comment that only the non-testifying defendant would know how the victim died was an improper comment on the defendant's right to remain silent).

¶46 Here, the District Court's comments had no effect other than to invite the jury's attention to the fact that Ament had not taken the stand. The District Court could have simply sustained the State's "facts not in evidence." Instead, the District Court emphasized that Ament "elected not to testify" and continued that Ament "may not present to you during his argument such statements by way of avoiding being sworn in as a regular witness

23

and testifying under oath and being subject to cross-examination." The District Court went beyond simply sustaining the objection and instructed the jury that Ament was trying to make statements of his personal belief, "as opposed to having said it under oath during the trial, which he had an opportunity to do so." The District Court's repeated and unnecessary comments on Ament's exercise of his constitutional right not to testify violated Ament's right against self-incrimination.

¶47 In considering how to review the error, it is important to note that Ament, representing himself, was not permitted to address the objections made by the State. Indeed, it appeared he maintained that the facts were in evidence as the video referring to fishing on the North Fork had been admitted. Regardless, it is clear the Court foreclosed any argument or ability of Ament to address the State's objections; indeed, the District Court admonished Ament, "Mr. Ament, I'll tell you one thing, you don't have the authority to interrupt me in this courtroom if that's not evident to you at this point it should be abundantly clear now." In my opinion, the District Court's admonishment is relevant when considering the merits of exercising plain error review.

¶48 "This Court may discretionarily review claimed errors that implicate a criminal defendant's fundamental constitutional rights, even if no contemporaneous objection was made, 'where failure to review the claimed error may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process.'" *State v. Wagner*, 2009 MT 256, ¶ 12, 352 Mont. 1, 215 P.3d 20 (quoting *State v. Godfrey*, 2004 MT 197,

¶ 22, 322 Mont. 254, 95 P.3d 166). The Court's comments clearly implicated Ament's fundamental constitutional right against self-incrimination. Further, given the context of Ament's entire and abbreviated closing argument, the District Court's stern admonishments, and the District Court's *sua sponte* comments that unnecessarily and blatantly drew attention to Ament's exercise of his right to remain silent, I would conclude the integrity of the proceedings was so compromised that reversal for a new trial is warranted. The language used by the District Court was manifestly intended or was of such character that the jury would naturally and necessarily take it as a comment on Ament's failure to testify. *Dawson*, 233 Mont. at 356, 761 P.2d at 359. Here, the comments that violated Ament's constitutional rights came from the District Court itself—the stakeholder in the proceeding that a jury looks to for impartiality and fairness.

¶49 I respectfully dissent from the Court's decision to the contrary.


/S/ LAURIE McKINNON


Justices Ingrid Gustafson and Katherine M. Bidegaray join in the dissenting Opinion of Justice Laurie McKinnon.


/S/ INGRID GUSTAFSON
/S/ KATHERINE M BIDEGARAY