FILED

09/02/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0710

DA 23-0710

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 197N

STATE OF MONTANA,

Plaintiff and Appellee,

v.

ALLEN MISAEL MARTINEZ,

Defendant and Appellant.

APPEAL FROM: District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DC-22-228
Honorable Jennifer B. Lint, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Rufus I. Peace, Peace Law Group, LLC, Jacksonville, Florida

For Appellee:

Austin Knudsen, Montana Attorney General, Tammy K Plubell,
Assistant Attorney General, Helena, Montana

William E. Fulbright, Ravalli County Attorney, Angela Wetzsteon,
Chief Deputy Attorney, Hamilton, Montana

Submitted on Briefs: August 6, 2025

Decided: September 2, 2025

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Allen Misael Martinez appeals from the judgment of conviction entered by the Twenty-First Judicial District Court, following a jury trial, of two counts of felony incest for engaging in sexual intercourse without consent and having sexual contact with his step-daughter, J.L. He argues the Court should exercise plain error review of his claimed errors and apply the cumulative error doctrine to reverse his convictions and remand for a new trial. He also argues the District Court erred by failing to credit his sentence for 385 days of jail time served, to which the State concedes.

¶3 Martinez began dating J.L.'s mother, Sandra, when the family lived in California, and eventually moved in with Sandra and J.L. Martinez and Sandra were married in February 2016, and shortly thereafter Martinez initiated sexual contact with J.L., when she was about 14 years old, by removing her clothes or putting his hand underneath her clothing to touch her vagina. Martinez repeatedly entered J.L.'s bedroom at night and touched her, which escalated into his initiating sexual intercourse with her multiple times a week, and sometimes multiple times a night. On occasions that Sandra found Martinez in J.L.'s bedroom, Martinez would say that he had heard J.L. talking in her sleep and was checking on her, or that, when he was found in her bed, he needed to be close to her. In 2017, when

2

J.L. became pregnant, Martinez took her to a clinic for an abortion, and afterward dropped J.L. off at her school for soccer practice. J.L. bled for two weeks thereafter and told Sandra that she was having an unusually long period. Sandra gave birth to twin boys during this time. Martinez continued abusing J.L. after the abortion and did not allow J.L. to have interaction with boys she knew from school. When J.L. told Martinez she was going to tell Sandra what he was doing, he put her into a chokehold and told her not to say a word, because it would ruin her mom. He also threatened to take away her younger twin brothers so that she would never see them again.

¶4 Later that year, J.L. moved to Montana to live with her maternal grandparents. Around March 2018, Martinez, Sandra, and J.L.'s younger brothers moved to Montana, and J.L. moved back in with her family. Sandra gave birth to two more boys. Martinez then began abusing J.L. again. J.L. would lock her bedroom door, but Martinez had a key to unlock it. J.L. pleaded for Martinez to leave her alone. While Sandra attempted to allow J.L. to have more personal freedom, Martinez was adamant that J.L. should not be around boys and attempted to control her activities. J.L. moved back to her grandparents' home but did not initially tell them what Martinez was doing. On one occasion when Sandra had invited J.L. over for dinner, an argument ensued between J.L. and Martinez wherein Martinez said, "You act like I raped you," to which J.L. replied, "Yep, you did, multiple times, and I got an abortion from it as well." Sandra was shocked and upset. Martinez admitted to Sandra that he had taken J.L. to get an abortion, but said, "[i]f she tries to tell you it's mine, she's lying," and said that J.L. had multiple other sexual partners. Martinez told Sandra that he and J.L. "had an affair."

3

¶5     J.L.'s disclosures led to the State's filing of two incest charges against Martinez, premised upon the actions he committed against J.L. in Montana.  He was arraigned on November 30, 2022, and the District Court set bail at $100,000.  Martinez remained incarcerated until sentencing.  Martinez filed a motion in limine based upon M. R. Evid. 404 and 403, for exclusion of evidence about other actions, including his sexual abuse of J.L. in California and his involvement in J.L.'s pregnancy and abortion.  The State argued the evidence was admissible for non-propensity purposes and not unduly prejudicial. The District Court denied the motion, reasoning, inter alia, that the evidence was relevant for the non-propensity purpose of motive and pattern of behavior, and was not unduly prejudicial under M. R. Evid. 403.

¶6     A jury trial was held on April 28 to May 2, 2023, wherein the District Court gave a limiting instruction regarding the purpose of the other acts evidence.  The State called Val Widmer, who held a master's degree in social work and was the director of a child advocacy center in Hamilton, to testify generally as a blind expert regarding victim disclosure of abuse.  In her testimony, she stated that, at her child center, about 90 percent of disclosures by a child victim are delayed, which she defined as exceeding 72 hours after the abuse event.  No objection was made to this testimony.  The jury found Martinez guilty of both charges.  At sentencing, the prosecutor advised the court that Martinez was entitled to 385 days of credit toward his sentence for jail time he had served.  The District Court sentenced Martinez to concurrent 100-year sentences for the two incest counts and designated him a Tier II sexual offender.  The court did not award credit for jail time Martinez served in either the oral pronouncement or written judgment.  Martinez appeals,

4

seeking reversal and a new trial on the basis of cumulative trial error reviewed under the plain error doctrine, and credit toward his sentence for time he served in jail.

¶7 "This Court may review unpreserved errors that implicate fundamental rights where failure to review them 'may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process.'" *State v. Marfuta*, 2024 MT 245, ¶ 21, 418 Mont. 353, 557 P.3d 1260 (quoting *State v. Deveraux*, 2022 MT 130, ¶ 21, 409 Mont. 177, 512 P.3d 1198). We apply the doctrine of plain error review "sparingly, on a case-by-case basis, considering the totality of circumstances of each case." *State v. George*, 2020 MT 56, ¶ 5, 399 Mont. 173, 459 P.3d 854 (internal quotations omitted). "The cumulative error doctrine applies only when an appellant establishes multiple errors that collectively prejudice his due process rights." *Marfuta*, ¶ 21 (citing *State v. Cunningham*, 2018 MT 56, ¶ 32, 390 Mont. 408, 414 P.3d 289). "The defendant must establish prejudice; a mere allegation of error without proof of prejudice is inadequate to satisfy the doctrine." *Cunningham*, ¶ 32. "[T]he cumulative effect of errors will rarely merit reversal." *Cunningham*, ¶ 33.

¶8 Martinez argues "his right to due process was violated by the cumulative errors during his trial which when taken together call into question the fundamental fairness of his trial." He cites to Widmer's testimony about the percentage of delayed disclosures she sees at her center. Further he cites to the "bad acts" evidence regarding his actions against J.L. in California, including testimony about J.L.'s abortion, which could have aroused jury hostility against Martinez and sympathy for J.L. Lastly, he cites to the prosecutor's

5

elicitation of testimony that Martinez declined to speak with law enforcement after he was Mirandized. The State answers that Martinez does not challenge the District Court's ruling on his motion in limine, but that the District Court gave a limiting instruction; that the other claimed errors were not objected to or challenged individually; that Widmer did not offer improper statistical evidence on the accuracy of delayed disclosures or otherwise bolster J.L.'s credibility; and that Martinez has made only general arguments that do not establish that he was prejudiced from any of the claimed errors such that plain error review is necessary to ensure the fundamental fairness or integrity of the judicial process.

¶9 Defense counsel did make evidentiary objections during the trial. As part of his cumulative error argument, Martinez contends the State improperly referenced "unnoticed" bad acts evidence when, during its examination of Sandra, the prosecutor asked when she had learned about Martinez's earlier sexual assaults of J.L., to which defense counsel objected on the basis of relevance. In response, the prosecutor noted that "none of [these] circumstances were the subject of the defendant's motion in limine, so I think we're permitted to get into that" for purposes of establishing context. The District Court ruled that the issue could be addressed "lightly," after which the prosecutor immediately moved on from the initial question and no further references were made. On this record, we conclude the District Court did not abuse its discretion in denying Martinez's relevance objection, and that the reference to these particular acts was de minimums in the context of the entire trial, and, therefore, not prejudicial.

¶10 When the prosecutor asked Detective Auch, "when you attempted to speak with the defendant, did he choose to talk with you?," defense counsel objected to the question as

6

violating Martinez's constitutional right to remain silent. The District Court overruled the objection, after which Detective Auch stated, "I had an opportunity to talk with him. I advised him of his Miranda warning, and he declined to speak with me." Thereafter, there were no further questions, argument or comments made by the prosecution about this issue for the remainder of the trial. Martinez argues that this question implied that he had something to hide and that, "along with all the other errors combined, calls into question the fundamental fairness of Martinez's trial."

¶11 "Commonly referred to as *Doyle* error, when a prosecutor's questions are 'designed to create an inference' that remaining silent after invoking *Miranda* rights is evidence of guilt, this violates the right to remain silent . . . ." *State v. Ament*, 2025 MT 97, ¶ 31, 421 Mont. 502, 568 P.3d 535 (quoting *State v. Wagner*, 2009 MT 256, ¶ 20, 352 Mont. 1, 215 P.3d 20); *see Doyle v. Ohio*, 426 U.S. 610, 96 S. Ct. 2240 (1976). While a singular question related to the course of law enforcement's investigation of a defendant and his response may not violate *Doyle*, prosecutors should be very cautious when treading in this area or they may well "create an inference" that a defendant's silence infers his guilt. *See Ament*, ¶ 32. Here, the lack of any further emphasis in the record on this issue leads us to conclude the District Court did not abuse its discretion by permitting the question to be asked and answered, and that the outcome of the trial was not influenced by this issue.

¶12 Upon review, we are not persuaded that a failure to review the claimed cumulative errors "may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process." *Marfuta*, ¶ 21. At sentencing, the prosecutor noted that Martinez

7

was entitled to 385 days of credit toward his sentence for jail time served during the course of the proceeding. The judgment failed to provide this credit. Thus, the conviction is affirmed, but this matter is remanded for entry of an amended judgment granting 385 days of credit for time served toward the Defendant's sentence.

¶13 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶14 Affirmed and remanded in accordance herewith.

/S/ JIM RICE

We Concur:

/S/ CORY J. SWANSON
/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON